IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRUCE C. EDWARDS, ANGELA K. EDWARDS TIMOTHY COUCH, and AMANDA COUCH, <br><br> Plaintiffs, <br><br> v. <br><br> HOLISHOR ASSOCIATION, INC., an Illinois Not For Profit Corporation, ROBERT LOWRANCE, an Individual, JEANNE MARTIN, an individual, STEVE YATES, Jr., an individual, SHAUN DILTZ, an individual, DAVE DECKER, an individual, MONTE THUS, an individual, MICHAEL HAWKS, an individual, and MIDWEST TITLE INSURANCE, INC., an Illinois corporation <br><br> Defendants. | No.: 18-cv-134 |

COMPLAINT

Plaintiffs, Bruce C. Edwards, Angela K. Edwards, Timothy Couch and Amanda Couch, by and through their attorney, Thomas W. Burkart, and Burkart Law Offices, for their Complaint against Holishor Association, Inc.,("Holishor"), Robert Lowrance ("Lowrance"), Jeanne Martin ("Martin") Steve Yates, Jr. ("Yates"), Shaun Diltz ("Diltz"), Dave Decker ("Decker"), Monte Thus ("Thus"), Michael Hawks ("Hawks"), and Midwest Title Insurance, Inc., ("Midwest") (collectively, "Defendants"), allege as follows:

NATURE OF THE ACTION

1. This action is brought for violations of the Racketeer Influenced and Corrupt Organizations (RICO) Act to: (1) recover monies paid by the plaintiffs that were wrongfully collected for Holishor (18 U.S.C. §1964(c); (2) prohibit the Defendants from engaging in illegal conduct as an enterprise (18 U.S.C. §1964(a); (3) recover treble damages for monies wrongfully collected by Defendants (18 U.S.C. §1964(c); and recover costs of suit, including a reasonable statutory attorneys' fee for the prosecution of this suit (18 U.S.C.§1964(c).

PARTIES

2. The Board of Directors of Holishor Association, Inc., is the governing body for the Holishor Association, Inc., an Illinois not-for-profit corporation and homeowners association comprised of single family residential lots located in Fort Russell and Moro Townships in Madison County, Illinois. Holishor Association, Inc. acted and participated in the Defendants' enterprise by virtue of the acts of its agents, employees and its Board of Directors as more particularly set forth below.

3. Joseph F. Lowrance is an individual and a member of the Board of Directors of Holishor Association, Inc. and resides at 59 Boxwood, Edwardsville, Illinois. Mr. Lowrance is the current President of the Board of Directors and his activity and participation in the Defendants' enterprise was his actions as President and member of the Board in making the decision to assert the applicability of the Defendants' covenants to plaintiffs' properties, and the extortion as detailed below.

4. Jeanne Martin is an individual and a member of the Board of Directors of Holishor Association, Inc. and resides at 1823 Port Lane, Worden, Illinois. Ms. Martin is the current vice-president of the Board of Directors and her activity and participation in the Defendants' enterprise was her actions as vice-president and member of the Board in making the decision to assert the applicability of the Defendants' covenants to plaintiffs' properties.

5. Steve Yates, Jr. is an individual and member of the Board of Directors of Holishor Association, Inc., and resides at 1985 Sextant, Worden, Illinois. Mr. Yates is the current secretary of the Board of Directors and his activity and participation in the Defendants' enterprise was his actions as Secretary and member of the Board in making the decision to assert the applicability of the Defendants' covenants to plaintiffs' properties.

6. Shaun Diltz is an individual and member of the Board of Directors of Holishor Association, Inc., and resides at 695 Blvd De Cannes, Edwardsville, Illinois and his activity and participation in the

Defendants' enterprise was his actions as member of the Board in making the decision to assert the applicability of the Defendants' covenants to plaintiffs' properties.

7. Dave Decker is an individual and member of the Board of Directors of Holishor Association, Inc., and resides at 1184 San Juan, Edwardsville, Illinois and his activity and participation in the Defendants' enterprise was his actions member of the Board in making the decision to assert the applicability of the Defendants' covenants to plaintiffs' properties.

8. Monte Thus is an individual and member of the Board of Directors of Holishor Association, Inc., and resides at 6 Cedar Court, Edwardsville, Illinois and his activity and participation in the Defendants' enterprise was his actions as member of the Board in making the decision to assert the applicability of the Defendants' covenants to plaintiffs' properties.

9. Michael Hawks is an individual and member of the Board of Directors of Holishor Association, Inc., and resides at 585 Clover, Edwardsville, Illinois and his activity and participation in the Defendants' enterprise was his actions as member of the Board in making the decision to assert the applicability of the Defendants' covenants to plaintiffs' properties.

10. Midwest Title Insurance, Inc., is a domestic corporation doing business in Madison County, Illinois, whose activity and participation in the Defendants' enterprise was the issuance of a title insurance commitment and policy representing that the Defendants' covenants, conditions and restrictions referred below and recorded in Book 2370 at Page 701 – 707 applied to the Edwards' plaintiffs' property.

11. The plaintiffs, Bruce C. and Angela K Edwards, are individuals and reside at what is commonly known as 6858 St. James Drive, unincorporated Edwardsville, Illinois.

12. The plaintiffs, Timothy and Amanda Couch, are individuals and reside at what is commonly known as 6870 St. James Drive, unincorporated Edwardsville, Illinois.

JURISDICTION AND VENUE

13. This Court has jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331 because there is a federal question involved under the federal civil Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961, et seq.

14. Venue is appropriate in this District under 28 U.S.C. §1391 as a substantial part of the events or omissions giving rise to the claim occurred within this district, and a substantial part of property that is the subject of the action is situated in this district.

15. The court has ancillary jurisdiction of State Law claims under *Kokkonen v. Guardian Life Insurance Company of America*, 114 S.Ct. 1673, 128 L.Ed.2d 391, 511 U.S. 375 (1994), and supplementary jurisdiction of those claims under 28 U.S.C. §1367.

## STATEMENT OF FACTS

16. Attached hereto and incorporated herein by reference as Exhibit 1 is the deed dated June 10, 1965, and recorded in the Madison County Recorder of Deeds office in Book 2365 at Page 40, conveying property which includes plaintiffs' properties from Albert W. Watson and Ora Mae Watson to Holiday Shores, Inc.

17. Attached hereto and incorporated herein by reference as Exhibit 2 is the deed dated May 16, 1969, and recorded in the Madison County Recorder of Deeds office in Book 2636 at Page 375, conveying property which includes plaintiffs' properties from Holiday Shores, Inc., to Jerome E. Glick, Lawrence Griggs and Donna Griggs. This deed is the only link between the plaintiffs' properties on Saint James Drive in Edwardsville, Illinois and any covenants and restrictions pertaining to Holiday Shores subdivisions.

18. Attached hereto and incorporated herein by reference as Exhibit 3 are the pertinent covenants and restrictions referenced in the above referenced deed from Holiday Shores, Inc. to Jerome E. Glick, Lawrence Griggs and Donna Griggs, which covenants are recorded in the Madison County Recorder of Deeds office in Book 2370 at Pages 701 – 707.

19. The only other covenants and restrictions mentioned in the above referenced deed from Holiday Shores, Inc., to Mr. Glick and the Griggs do not substantially effect plaintiffs' properties. Those covenants appearing at Book 2379, Page 116 deal exclusively with water mains. Those covenants appearing at Book 2425, Page 698 affected the living space on the ground floor of all then existing subdivisions in Holiday Shores to the exclusion of plaintiffs' properties. Those covenants appearing at Book 2436, Page 165 deal exclusively with utilities and water mains.

20. Paragraph 9 of these covenants and restrictions expressly provides that "All of the restrictions, conditions, covenants or agreements contained herein shall continue until January 1, 1975", more than twenty years prior to plaintiffs acquiring an interest in their properties at 6858 and 6870 Saint James Drive in Edwardsville, Illinois.

21. Since the expiration of the covenants and restrictions recorded in Book 2370 at Pages 701-707 on January 1, 1975, no owner in the chain of title of either of the plaintiffs' properties has recorded any agreement to subject their property to the Defendants' control.

22. Attached hereto and incorporated herein by reference as **Exhibit 4** is the deed conveying to the Edwards plaintiffs their interest in 6858 Saint James Drive in Edwardsville, Illinois. The Edwards plaintiffs did not acquire their interest in this property until March 26th, 1999, more than 24 years after the only covenants and restrictions potentially linked to their chain of title expired.

23. Attached hereto and incorporated herein by reference as **Exhibit 5** is the deed conveying to the Couch plaintiffs their interest in 6870 Saint James Drive in Edwardsville, Illinois. The Couch plaintiffs did not acquire their interest in this property until November 10, 2015, more than 40 years after the only covenants and restrictions potentially linked to their chain of title expired.

24. During the past ten (10) years, the defendants engaged in a pattern of racketeering activity by committing the following predicate acts which were related to each other, and which are indictable under the criminal laws specifically listed in 18 U.S.C. §1961:

a. (18 U.S.C. §1961(1)(A) – Extortion) On or about June 30, 2016, in a meeting of the Defendants' Board of Directors, Robert Lowrance, with the approval and consent of the Board members present, committed a threat of extortion to obtain money from both the Edwards and the Couches when Mr. Lowrance threatened both Bruce Edwards and Timothy Couch that they would have their water and sewer services disconnected if they did not consent to be subject to the Defendants' covenants, rules, assessments and restrictions.

   i. Section 16-1 of the Illinois Criminal Code (720 ILCS 5/16-1) makes theft by threat (extortion) in excess of $500.00 a Class 3 felony, and Section 5-4.5-40 of the Illinois Unified Code of Corrections (730 ILCS 5/5-4.5-40) provides a minimum sentence of 2 years for commission of a Class 3 felony.

   ii. At the time the aforementioned threat was made, the annual assessment being demanded by the Defendants exceeded $500.00, which makes Mr. Lowrances' actions a threat involving extortion that was and is chargeable under State law and punishable by imprisonment for more than one year.

b. On multiple other occasions, Defendants have made similar threats of extortion on other land owners whose properties are not subject to Defendants covenants, rules, regulations and restrictions, but are serviced by the Holiday Shores Sanitary District. The factual contentions in this paragraph are made on information and belief and will likely have evidentiary support after a reasonable opportunity for further investigation and discovery (Rule 11(b)(3)).

c. (18 U.S.C. §1341 – Mail Fraud) On the dates listed below, Yates, in his role as secretary of the Board of Directors for Holishor, or some other, at this time unknown, agent acting at the direction of Defendants, having devised a scheme or artifice to obtain money

from Bruce and Angela Edwards by means of the false representation that the Edwards' property was subject to Holishor's covenants, bylaws and restrictions, and that the Edwards owed Holishor annual assessments and dues, knowingly caused to be delivered by mail the statements that make up Group **Exhibit A** which is attached hereto and incorporated herein by reference, demanding that the Edwards pay Holishor the amounts listed next to the following dates:

| Date | Description |
|---|---|
| 3/24/2005 | Holishor statement mailed to Edwards assessing late fees and demanding $364.49 |
| 11/14/2005 | Holishor statement mailed to Edwards assessing dues totaling $475 and reflecting Edwards' payment under protest |
| 11/19/2007 | Holishor statement mailed to Edwards demanding $575 |
| 1/1/2009 | Holishor statement mailed to Edwards demanding $600 |
| 2/11/2009 | Holishor statement mailed to Edwards assessing late fee and demanding $616.50 |
| 4/17/2009 | Holishor statement mailed to Edwards assessing late fee and demanding $635.09 |
| 11/1/2009 | Holishor statement mailed to Edwards demanding $575 and reflecting Edwards' payment on 1/11/10 "with reservation of rights." |
| 2/12/2010 | Holishor statement mailed to Edwards invoicing assessments assessing late fee and demanding $408.63 |
| 4/12/2010 | Holishor statement to Edwards reflecting payments made by Edwards and claiming balance due of $236.38 |
| 5/17/2010 | Holishor statement mailed to Edwards assessing late fees and reflecting Edwards' payments, and demanding balance of $242.25 |
| 2/14/2012 | Holishor statement mailed to Edwards assessing $625 for fees and $50 dues, and late fees for a total of $688.30 |
| 4/16/2012 | Holishor statement to Edwards reflecting payments made by Edwards assessing late fees and claiming balance due of $246.87 |
| 4/13/2015 | Holishor statement mailed to Edwards claiming balance forward of $855.09, assessments for 2015, assessing late fees, and demanding balance of $1,671.83 |
| 3/1/2016 | Holishor statement mailed to Edwards claiming a balance forward of $1,858.65, demanding $625 for 2016 assessment, $57.25 for 2016 special assessment, several late fees and $50 for 2016 dues, for total of $2,690.41, with the balance forward |
| 5/1/2016 | Holishor statement mailed to Edwards reflecting more late fees, demanding a balance of $2,763.80 |
| 1/1/2017 | Holishor statement mailed to Edwards reflecting a balance forward of $3,068.50, and demanding $660 for 2017 assessments and $50 for 2017 dues |

| | |
|---|---|
| 3/1/2017 | Holishor statement mailed to Edwards adding late fees, demanding a balance of $3,930.29 |
| 5/1/2017 | Holishor statement mailed to Edwards, adding more late fees, and demanding a balance of $4,044.03 |
| 1/1/2018 | Holishor statement mailed to Edwards, reflecting a balance forward of $4,493.18, and demanding $660 for 2018 assessments and $50 for 2018 dues, demanding a total of $5,203.18 |

d. (18 U.S.C. §1341 – Mail Fraud) On the dates listed below, Yates, in his role as secretary of the Board of Directors for Holishor, or some other, at this time unknown, agent acting at the direction of Defendants, having devised a scheme or artifice to obtain money from Timothy and Amanda Couch by means of the false representation that the Couches' property was subject to Holishor's covenants, bylaws and restrictions, and that the Couches owed Holishor annual assessments and dues, knowingly caused to be delivered by mail the statements that make up Group **Exhibit B** which is attached hereto and incorporated herein by reference, demanding that the Couches pay Holishor the amounts listed next to the following dates:

| | |
|---|---|
| 1/1/2018 | Holishor statement mailed to Couches, reflecting a balance forward on 12/31/2017 of $2,519.82, and demanding $660 for 2018 assessments and $50 for 2018 dues, for a total of $3,229.82 |

e. (18 U.S.C. §1341 – Mail Fraud) On May 18, 2009, Holishor, through its agent, Glenn Dalton, in his role as association manager, having devised a scheme or artifice to obtain money from Bruce and Angela Edwards by means of the false representation that the Edwards' property was subject to Holishor's covenants, bylaws and restrictions, and that the Edwards owed Holishor annual assessments and dues, knowingly caused to be delivered by mail the collection letter attached hereto as **Exhibit C** to Bruce and Angela Edwards, threatening to place a lien upon the Bruce's property.

f. (18 U.S.C. §1341 – Mail Fraud) On March 29, 2017, Holishor, through its agent, Glenn Dalton, in his role as association manager, having devised a scheme or artifice to obtain money from Bruce

and Angela Edwards by means of the false representation that the Edwards' property was subject to Holishor's covenants, bylaws and restrictions, and that the Edwards owed Holishor annual assessments and dues, knowingly caused to be delivered by mail the collection letter attached hereto as **Exhibit D** to Bruce and Angela Edwards, threatening to file a lawsuit to collect such money, including a threat that the Edwards would owe Holishor its attorney fees spent in bringing such a suit.

g. (18 U.S.C. §1341 – Mail Fraud) On December 31, 2014, Holishor, through its agent, Glenn Dalton, in his role as association manager, having devised a scheme or artifice to obtain money from Bruce and Angela Edwards by means of the false representation that the Edwards' property was subject to Holishor's covenants, bylaws and restrictions, and that the Edwards owed Holishor annual assessments and dues, knowingly caused to be delivered to the Madison County Recorder of Deeds and returned to Holishor by mail the Notice of Lien attached hereto as **Exhibit E** in the amount of $1,005.09, specifically referring to the above referenced covenants in Book 2370 at Page 701, Holishor knew had expired.

h. (18 U.S.C. §1341 – Mail Fraud) On a monthly basis, stretching back to at least July, 2014, Yates, in his role as secretary of the Board of Directors for Holishor, or some other, at this time unknown, agent acting at the direction of Defendants, having devised a scheme or artifice to obtain money from Bruce and Angela Edwards by means of the false representation that the Edwards' property was subject to Holishor's covenants, bylaws and restrictions, and that the Edwards owed Holishor annual assessments and dues, knowingly caused to be delivered by mail to each and every owner in Holiday Shores subdivisions, the Holiday Times in which it listed the Edwards as persons whose privileges had been suspended for not complying with Holishor covenants restrictions and rules. Each and every named individual defendant has approved the

publication and mailing of these Holiday Times representations. A representative demonstrative list as published and mailed in July, 2014 is attached hereto as **Exhibit F**.

i. (18 U.S.C. 1343 – Wire Fraud) Each and every individually named defendant voted to begin transmitting and did transmit by means of wire the Holiday Times lists referred to in sub-paragraph h above to the Holishor world wide web site.

25. The following facts demonstrate that the defendants' have no intent to cease their criminal and fraudulent activity:

   a. On October 25, 2005, Bruce Edwards sent a letter to then Holishor manager, Ed Notter detailing his research that indicated to Edwards that his property was not subject to the covenants, rules or regulations of Holishor and demanding proof establishing the Association's authority. This letter is attached and incorporated herein as **Exhibit G**.

   b. On November 11, 2005 Edwards mailed another letter memorializing that Notter was refusing to give Edwards any proof that his property was subject to Holishor's covenants, rules or regulations. This letter is attached and incorporated herein by reference as **Exhibit H**.

   c. On December 2, 2005, Ed Notter, on behalf of Holishor, sent the letter attached and incorporated herein by reference as **Exhibit I**, to the Edwards, threatening fines if the Edwards did not apply for a building permit to a deck on which the Edwards had begun construction.

   d. On January 8, 2006, Bruce Edwards sent a letter, attached and incorporated herein as **Exhibit J**, to Ed Notter stating that any monies paid to Holishor were under protest.

   e. Attached hereto and incorporated herein by reference as **Exhibit K** is an email sent to both Bruce Edwards and Tim Couch from Holishor's attorney, Andrew Carruthers dated December 19, 2016, asserting Holishor's errant position that paragraph 11 of an

    Agreement between Holiday Shores, Inc. and Holishor Association, Inc., assigned Holiday Shores Inc.'s rights in the covenants recorded in Book 2070 at Page 701 – 707, when in fact that paragraph is nothing more than a covenant to assign, which covenant was never executed. This email is not offered for the purpose of proving the truth of any representations contained therein which plaintiffs deny, but for the limited purpose of proving the element of continuity and that Defendants have no intent to cease their criminal and fraudulent activity.

  f. Despite the ongoing controversy, the Defendants continue to insist both the Couches' and the Edwards' properties are subject to Defendants' expired covenants recorded at Book 2070, Page 701, as evidenced by Group Exhibits A and B.

  g. As recent as November 1, 2017, despite lacking standing to do so, the Defendants filed suit in small claims in the Circuit Court of Madison County, Illinois in an attempt to collect assessments Defendants claim are due to them against both the Edwards and the Couches.

26. Midwest Title further participated and facilitated the Defendants' enterprise when it rendered the opinion which is referred to in attorney Carruthers' email dated December 19, 2016, i.e. that the covenants in Book 2370 at pages 701 – 707 did not expire and that the "Agreement" referred to in Carruthers' email was, in law and fact, an actual assignment as opposed to a covenant to execute and assignment in the future.

COUNT I

(Action under Civil RICO, 18 U.S.C. §1962(a))

Plaintiff restates and incorporates by reference paragraphs 1 through 26 above as and for paragraphs 1 through 26 of Count I as though fully set forth herein.

27. Since the Edwards became owners of their property located at 6858 St. James Drive, Holishor has collected assessments, fees and other monies from Bruce and Angela Edwards in the total amount of $9,043.23.

28. Angela Edwards is employed by the Edwardsville School District as a substitute teacher. She has suffered special injuries of humiliation and loss of business reputation when, while substitute teaching at Midway School, which includes parents and students living within the Holiday Shores subdivisions, several of the parents of her students inquired why her and her husband's names were on the list referred to in paragraph 24 h & i above.

29. At the time the Couches closed on their property at 6870 St. James Drive, on November 10, 2015, $836.41 of their closing money was held in escrow by the title company that closed the transaction, which money is labeled on the Couches' HUD-1 closing statement as Association Dues and Initiation Fees to Holishor. This $836.41 was not returned to the Couches until the title company sent them a check for that amount on May 23, 2016. The Couches were thereby injured in that they were deprived of the interest for the period of time they were deprived of the use of those funds.

30. At certain times, the specifics of which are known only to the Defendants, but which can be determined through the discovery process of this case, as a member of the Board of Directors each and every one of the individual defendants voted to approve, and/or ratify the actions of the Defendants' enterprise as applied to the Couches' and the Edwards' properties.

31. As a result of Defendants' racketeering activity the Edwards and the Couches have been damaged in an amount that will be determined at trial of this matter.

WHEREFORE, Plaintiffs, pray for judgment in their favor and against Defendants on Count I and respectfully requests that the Court enter an Order:

i. Awarding the Plaintiffs their actual damages in an amount to be determined at trial;

  ii. Awarding the plaintiffs their treble damages based upon the amount of their actual damages that are proved at trial;

  iii. Quieting title of the Edwards' property by declaring the lien referred to in paragraph 24 g above to be an invalid cloud upon the Edwards property and executing a recordable notice of release of such lien;

  iv. Awarding the Plaintiffs' reasonable statutory attorney's fees incurred to prosecute this matter;

  v. Costs of suit; and

  vi. Such other and further relief as this Court deems fair and equitable.

## COUNT II

### (Edwards' Quiet Title Action)

  The Edwards plaintiffs restate and incorporate by reference paragraphs 1 through 26 above as and for paragraphs 1 through 26 of Count III as though fully set forth herein.

  27. The lien referred to above in subparagraph g of paragraph 25 constitutes a cloud upon the title of Bruce and Angela Edwards.

  28. The interest the defendants assert in the lien notice they recorded, is in fact unfounded as the defendants, in fact and law, have no right to collect assessments from plaintiffs.

  WHEREFORE, the Edwards plaintiffs request that this court enter an order declaring the defendants have no interest in the Edwards' property and that the notice of lien recorded as document number 2015R03449 is invalid, and that this court execute a recordable document releasing the notice of lien, or for such other relief the court deems appropriate.

## Count III

### (Edwards' & Couches' Declaratory Action)

The plaintiffs restate and incorporate by reference paragraphs 1 through 26 above as and for paragraphs 1 through 26 of Count IV as though fully set forth herein.

27. On July 12, 1976, the Defendants, or someone or some entity working at their direction, recorded in Book 3033 at Pages 432 – 448 in the Madison County Recorder's Office, a document titled "Agreement", the pertinent part of which, for the purpose of this count of this counterclaim, is paragraph 11. Paragraph 11 reads as follows:

> "HOLIDAY [Holiday Shores, Inc.,] further covenants and agrees to assign to the ASSOCIATION all of its rights and easements reserved to it in the respective plats of Holiday Shores Subdivisions, hereinabove specified, and reserved in a document recorded in the Recorder's Office of Madison County, Illinois, in Book 2370, Page 701, and amendments thereto of record, provided that no such assignment shall be effective to deprive present owners or future purchasers of lots of any rights and easements granted or implied in or by recorded plats and restrictions of record."

28. As mentioned above in the December 19, 2016 email from their attorney (Exhibit L), Defendants assert that paragraph 11 is in fact an assignment to them of some right to apply the covenants and restrictions recorded in Book 2370 at Pages 701 – 707 to plaintiffs' properties.

29. Plaintiffs insist that paragraph 11 is nothing more than a covenant to execute an assignment at some future date, and as to any rights reserved in the document recorded in Book 2370 at Pages 701-707, even if Holiday Shores, Inc., were still in existence, which it is not, there can be no assignment in the future, as all such covenants expired with the passage of time on January 1, 1975, more than one and a half years prior to the recording of the Agreement.

30. Holiday Shores, Inc., in fact never executed an assignment of its rights.

31. The language referred to in paragraph 20 of this complaint that "All of the restrictions, conditions, covenants or agreements contained herein shall continue until January 1, 1975", clearly and unambiguously terminated the applicability of any of the restrictions, conditions, covenants or agreements that plaintiffs' predecessors in title may have agreed to be bound to for the short period of time ending on January 1, 1975.

32. There is an actual controversy between the parties as to the effect of the "Agreement" recorded in Book 3033 at Pages 432 – 448.

33. Because the controversy affects plaintiffs' real property, it is unique and they are entitled to obtain a declaration of the parties' rights.

WHEREFORE, plaintiffs request that this court enter an order:

A. Declaring that paragraph 11 of the "Agreement" recorded in Book 3033 at Page 438, is not an assignment, but a covenant to execute an assignment at some future time;

B. Declaring that given the passage of time, all of the restrictions, conditions, covenants or agreements contained in the document recorded in Book 2370, at Pages 701-707 can no longer be assigned;

C. Declaring that defendants have no right to impose any of their rules, regulations, covenants, restrictions, assessments, dues, or any other matters upon the plaintiffs' properties; and

D. For such other declaration of the parties' rights as the proofs of this case dictate.

**Count IV**

**(Edwards' & Couches' Declaratory Action – Alternative Pleading Under 735 ILCS 5/2-613)**

The plaintiffs restate and incorporate by reference paragraphs 1 through 26 above as and for paragraphs 1 through 26 of Count IV as though fully set forth herein.

27. On July 12, 1976, the Defendants, or someone or some entity working at their direction, recorded in Book 3033 at Pages 432 – 448 in the Madison County Recorder's Office, a document titled "Agreement", the pertinent part of which, for the purpose of this count of this counterclaim, is paragraph 11. Paragraph 11 reads as follows:

> "HOLIDAY [Holiday Shores, Inc.,] further covenants and agrees to assign to the ASSOCIATION all of its rights and easements reserved to it in the respective plats of Holiday Shores Subdivisions, hereinabove specified, and reserved in a document recorded in the Recorder's Office of Madison County, Illinois, in Book 2370, Page 701, and amendments thereto of record, provided that no such assignment shall be effective

>  to deprive present owners or future purchasers of lots of any rights and easements granted or implied in or by recorded plats and restrictions of record."

28. As mentioned above in the December 19, 2016 email from their attorney (Exhibit L), Defendants assert that paragraph 11 is in fact an assignment to them of some right to apply the covenants and restrictions recorded in Book 2370 at Pages 701 – 707 to plaintiffs' properties.

29. Plaintiffs insist that paragraph 11 is nothing more than a covenant to execute an assignment at some future date, and as to any rights reserved in the document recorded in Book 2370 at Pages 701-707, even if Holiday Shores, Inc., were still in existence, which it is not, there can be no assignment in the future, as all such covenants expired with the passage of time on January 1, 1975, more than one and a half years prior to the recording of the Agreement.

30. Holiday Shores, Inc., in fact never executed an assignment of its rights.

31. Pleading in the alternative to Count III above, the language used by the single signatory of the document recorded in Book 2370 at pages 701 – 707, the language in the Glick-Griggs deed (plaintiffs' shared predecessors' in title) recorded in Book 2636 at Page 375, the language used by the parties to the "Agreement" referred to in paragraph 28 above, as well as the fact that such "Agreement" was not recorded until one and a half years after January 1, 1975, all operate to create an ambiguity as to whether the restrictions and covenants in the Glick-Griggs deed ceased on January 1, 1975.

32. Under Illinois law, any doubt whether the restrictions were to cease on January 1, 1975, or whether they were to be permanent, must be resolved in favor of natural free use and against any restrictions thereupon. *Leverich v. Roy,* 338 Ill.App. 248, 87 N.E.2d 226, 228 (2d Dist., 1949); citing *Eckhart v. Irons* 128 Ill. 568, 582, 20 N.E. 687, 692 (1889).

33. There is an actual controversy between the parties as to the effect of the "Agreement" recorded in Book 3033 at Pages 432 – 448.

34. Because the controversy affects plaintiffs' real property, it is unique and they are entitled to obtain a declaration of the parties' rights.

WHEREFORE, plaintiffs request that this court enter an order:

E.  Declaring that paragraph 11 of the "Agreement" recorded in Book 3033 at Page 438, is not an assignment, but a covenant to execute an assignment at some future time;

F.  Declaring that given the passage of time, all of the restrictions, conditions, covenants or agreements contained in the document recorded in Book 2370, at Pages 701-707 can no longer be assigned;

G.  Declaring that defendants have no right to impose any of their rules, regulations, covenants, restrictions, assessments, dues, or any other matters upon the plaintiffs' properties; and

H.  For such other declaration of the parties' rights as the proofs of this case dictate.

By: /s/ *Thomas W. Burkart*
    Thomas W. Burkart  #06191030
    Attorney for the Defendants